McGINNIS, *Administrator*, *Appellant*, v. LORING, *Administrator*.

Division One, January 16, 1895.*

1. **Practice**: INSTRUCTIONS. The word "refused" on the margin of an instruction is controlled by a recital in the bill of exceptions that it was given.

---

* Motion for rehearing denied on this date.

2. ——— : ——— : EVIDENCE. The erroneous admission of evidence is cured by an instruction, the effect of which is to exclude such evidence from consideration.

3. **Probate Court**: JUDGMENT: SURETY. The payment by one surety of a judgment against himself and a cosurety is a defense to its classification by the probate court against such cosurety's estate.

4. **Surety**: JUDGMENT: ASSIGNMENT. A surety who pays a judgment against himself and cosureties can not, by taking an assignment thereof, enforce the full amount of the judgment against his cosureties.

5. ——— : ——— : ——— : CONTRIBUTION. A surety who unconditionally pays a judgment against himself and a cosurety, without taking an assignment thereof, can not compel contribution from his cosurety.

*Appeal from St. Louis City Circuit Court.*—HON. D. D. FISHER, Judge.

AFFIRMED.

*M. Kinealy, T. J. Rowe, R. S. MacDonald* and *Jas. R. Kinealy* for appellant.

(1) The probate court should have classified this judgment. *Wernse v. McPike*, 100 Mo. 476, followed in *Stephens v. Bernays*, 24 S. W. Rep. 47 (as to the principle involved). And especially as it had ample power to do justice, and in doing so to call in the aid of equitable rules and principles. 1 Woerner's Am. Law of Admin., 340; *Titterington v. Hooker*, 58 Mo. 593. And, of course, on appeal, the circuit court had the same duty and powers. (2) The court erred in admitting oral testimony of the contents of the letters of the Clarks to witness Babcock. 1 Rice on Evid., 147. (3) The court erred in admitting in evidence the assignment of the Clark judgment made by Martha Moody and Oscar K. Lyle to Cassimir G. Loring. *First.* Because the *situs* of the debt is in St. Louis. *Bank v. Wickham*, 23 Mo. App. 663; *Chapman v. Fish*, 6 Hill 554. *Second.* Because the foreign administra-

tor can not assign debts, the *situs* of which is here, and especially after letters of administration have been granted here. *In re partnership of Ames*, 52 Mo. 290; *Reynolds v. McMullen*, 55 Mich. 568; 3 Am. and Eng. Encyclopedia of Law, 647, 655*h*; *Wyman v. Halstead*, 109 U. S. 654. (4) The evidence shows that Mrs. Lyle directed her agent to purchase the judgment and bond claims, and that he had no other power; it also shows that the Clarks sold the judgment and the bond claims, and, themselves, participated in no other transaction. On this matter of a purchase, and on no other, did the minds of the principals meet, and this, then, was the act accomplished. And the evidence shows that this was the intention and act of Mrs. Lyle's agent. (5) Evidence was introduced, attempting to show that Mrs. Lyle was given property by Alex. L. Lyle, on condition that she should pay this judgment, and it was argued that she was bound to execute this trust, and it will be assumed that she executed it. This is error. The trust, if any, would be a volunteer trust as to Cozzens, and there would be no obligation on Mrs. Lyle to enforce it for Cozzens' benefit. *Lane v. Ewing*, 31 Mo. 82; *Henderson's Adm'r v. Henderson*, 21 Mo. 381; *Bunn v. Winthrop*, 1 Sandf. Ch. 262; *Ellison v. Ellison*, 6 Ves. 662. (6) But, even if Alex. L. Lyle were to be deemed as providing the money to pay this judgment, he would have had a right to take an assignment of it in the name of another, and use it to enforce the liability of Cozzens. *Chandler v. Higgins*, 109 Ill. 602. (7) And at this day the courts hold pretty generally, in the United States, that the surety who pays the judgment is subrogated to the creditor as to the judgment, to enforce payment of his liability from the cosurety. 2 Brandt on Suretyship [last Ed.], sec. 303, p. 439; secs. 309, 310, 311, pp. 450 *et seq.*; Baylies on Suretyship, p. 367, and cases cited; *Cuyler v. Ensworth*,

6 Paige, 32; *Wright v. Co.*, 82 Pa. St. 80; *Jackson v. Baker*, 22 L. R. A. 448. (8) The defendant can not play fast and loose in this matter. He has introduced an assignment of the judgment by the New York administratrix of Moody to defeat this action, and as there is no other apparent ground for the action of the court on the instructions than the assignment, the defendant must be taken to rely on it as being the basis of the court's ruling. He is, therefore, estopped to deny that Moody owned the judgment at the time of Martha Moody's assignment, *i. e.*, on December 8, 1890. *Cross v. Terlington*, 2 Murphy, 6; *Watson v. Wace*, 9 B. and C. 153; *Brown v. Brown*, 45 Mo. 414; *Smith v. Patterson*, 95 Mo. 525; *Railroad v. Green*, 68 Mo. 169; *Wilcoxen v. Osborn*, 77 Mo. 629; *Fitzgerald v. Barker*, 85 Mo. 13.

*C. A. Schnake* and *Jas. M. Loring* for respondent.

(1) The plea of payment is a common law plea, and it was the duty of the administrator to interpose it to the classification of the judgment, and of the probate court to pass on it. 2 Woerner's Law of Admin., p. 826; *Stephens v. Bernays*, 24 S. W. Rep. 47. (2) Alex. L. Lyle could not take an assignment of the judgment in the name of another and use it to enforce the liability of Cozzens. (3) Courts will not, under the guise of subrogation, help one surety to collect from his cosurety more than his proportionate share of the loss. (4) An assignment to one of his own debt is an absurdity; it can not be done. *Hull v. Sherwood*, 59 Mo. 172; *Riggs v. Goodrich*, 74 Mo. 108; *Babb v. Taylor*, 56 Mo. 311.

BLACK, P. J.—Plaintiff, as administrator of the estate of Horace Moody, presented to the probate court of the city of St. Louis a judgment for classification against the estate of William H. Cozzens. The probate

court rejected the demand, and the plaintiff appealed. The circuit court gave a like judgment, and the plaintiff appealed to this court.    The defense relied upon in both courts was this, that the judgment had been paid by persons acting in the interest of the estate of Alexander Lyle, he being one of the judgment debtors.    The facts, which stand admitted or are proved beyond a doubt, are to the following effect:

William H. Cozzens, Alexander Lyle and two other persons were sureties on three bonds given by Isaac Fisher as curator of the estates of Edward Clark, Robert Clark, and Anna Clark, a separate bond being given for each ward.    On the twenty-second of March, 1872, Edward Clark obtained judgment on the bond given for his benefit, against Fisher, Lyle and Cozzens for the sum of $2,497.    Fisher then owed each of the other wards a like amount, but their claims were never reduced to judgment.    Execution was issued on the judgment. While matters stood in this shape, Alexander Lyle, the only then solvent judgment debtor, caused his son, Oscar, to open negotiations with Mr. Babcock, looking to a settlement of the judgment and the claims of the other minors.    Babcock was the attorney who obtained the judgment.    Alexander Lyle died on the eighth day of May, 1874.    A few days before his death he turned over to his wife some notes and also some stock in a corporation, and at the same time gave her directions to settle the claims of the Clarks.    On the twenty-sixth of May, 1874, after the death of Alexander Lyle, Oscar Lyle gave Babcock $1,500 in full settlement of the judgment.    In making this settlement, he acted as the agent of his mother and used money which she had borrowed for that purpose.    There was at that time, and probably prior thereto, an understanding that the claims of Robert and Anna Clark should be settled on like terms.    These two claims were settled by Oscar,

acting again as the agent of his mother, on the twenty-ninth of September, 1874, at which time Robert and Anna assigned their causes of action to Oscar Lyle. At this last named date, Oscar took a written assignment of the judgment to himself. The consideration paid for this assignment was the $1,500 paid to Babcock four months before. In January, 1876, Oscar Lyle assigned the judgment to his father-in-law, Horace Moody. In 1892 the plaintiff, as the Missouri administrator of Moody's estate, presented the judgment for classification against the estate of Cozzens. Plaintiff seeks to have the judgment classed for the full amount thereof, and the accrued interest thereon. He seems to be acting for, and in the interest of, Mrs. Lyle and some other persons, whose interest in the matter is not clearly defined. Oscar Lyle appeared as a witness for the defendant.

The parties produced much other evidence. Some of it tends to show that Mrs. Lyle directed Oscar to procure an assignment of the judgment to her when he paid the $1,500 to Babcock, and that there was then an understanding that Babcock would communicate with his client and procure an assignment of the judgment. On the other hand, there is much evidence tending to show that Oscar Lyle paid the $1,500 in settlement and discharge of the judgment, and that the assignment of it to him was an afterthought.

It appears that Horace Moody died a resident of the state of New York, and his wife administered on his estate there. As such administratrix she executed a writing in 1890, professing to assign the judgment to Cassimir Loring. The defendant read this assignment in evidence, over the objection of the plaintiff.

The court gave the following instruction at the request of the plaintiff:

"Unless the court, sitting as a jury, believes from the evidence that Edward Clark was not the owner of the judgment in the cause of the state of Missouri suing to the use of Edward Clark v. Isaac Fisher et al, read in evidence, at the time he executed the assignment of it to Oscar K. Lyle, also read in evidence, he will find for the plaintiff."

The following instruction was given by the court of its own motion, being in substance and effect the same as one asked by the plaintiff:

"If it appears from the evidence that Oscar K. Lyle was directed, as agent, to purchase the judgment read in evidence, and, in pursuance of his instructions, made negotiations for the purchase of said judgment with the agent of the plaintiff in said judgment, and paid the sum of money agreed upon with said agent, and subsequently received from said plaintiff the assignment of said judgment read in evidence, then said assignment vested the legal title of said judgment in said Lyle in trust for his principal, although said agent of plaintiff in said judgment may have supposed that the money paid to him was paid in satisfaction or extinguishment of said judgment."

1.   Some question is made here as to whether the first instruction before set out was given or refused. The bill of exceptions says it was given, though the word "refused" appears on the margin of the instruction.   On this state of the record we think the recital in the bill of exceptions that the instruction was given must control.

2.   The next inquiry arises out of the action of the court in admitting in evidence the assignment of the judgment made by the foreign administratrix to Cassimir Loring.   If the instruction given at the request of the plaintiff excluded this assignment, then he has no ground of complaint.   That instruction, it will be

VOL. 126, OCTOBER TERM, 1894. 411

seen, directs a finding for plaintiff, unless Edward Clark was not the owner of the judgment when he assigned it to Oscar Lyle. It leaves but one issue of fact in the case, and that was whether Edward Clark owned the judgment at the date of that assignment. It, in effect, says the assignment by Clark to Oscar Lyle and by him to Moody gave the plaintiff a right to recover, notwithstanding the assignment by the foreign administratrix to Loring, if Clark was the owner of the judgment when he made the assignment to Oscar Lyle. The expression "owner of the judgment" is rather unfortunate, but it is one selected by the plaintiff himself, and he can not complain of its use.

What, then, does it mean? It was conceded by all parties throughout the entire trial that Edward Clark owned the judgment, unless it had been satisfied. The instruction means, and can only mean, this, that the finding should be for the plaintiff, unless the judgment had been satisfied prior to the date of the assignment of it by Edward Clark to Oscar Lyle. The assignment made by the foreign administratrix was therefore in the end excluded, and, this being so, we need not consider the objections made to it when first received in evidence.

3. The defendant administrator had a perfect right to appear in the probate court and plead payment as a defense to the judgment. If paid, it was the plain duty of the court to reject it, though it was a judgment. We find nothing in *Wernse v. McPike*, 100 Mo. 476, in any way in conflict with what we have just said. To say a paid and satisfied judgment should be classed as a demand against a dead man's estate is simply absurd, and this court never thought of promulgating any such doctrine.

4. As Alexander Lyle and Cozzens were cojudgment debtors and cosureties, it is insisted that the widow and heirs of Lyle had the right, upon paying

the judgment, to take an assignment and then enforce the judgment against Cozzens and his estate. Some cases hold that when one cosurety pays a judgment in full, he may take an assignment for the purpose of enforcing contribution from his cosurety, but this is as far as they go. Without expressing any opinion upon the question at this time, let it be conceded, for all the purposes of this case, that such is the law, still, all this does not aid the plaintiff here for two reasons. In the first place the plaintiff is not seeking or asking contribution. What he demands is payment of the judgment and accrued interest in full.

In the next place, the trial court must have found, under the instructions given, that the judgment was paid and satisfied, so that the assignment, made some months thereafter, transferred nothing. If the judgment was paid, and such was the understanding of the parties when the $1,500 was paid to Babcock, then Clark thereafter had nothing to assign. He could not bring to life the dead judgment by assigning it to another. "Whether a codefendant has the right, on paying a judgment, to take an assignment for his benefit or not, his payment without such assignment, and without any agreement that the judgment shall be kept alive for the purpose of enabling him to compel contribution from his codefendants, is a complete and irrevocable satisfaction." 2 Freeman on Judgments [4 Ed.], sec. 472.

But the plaintiff insists the evidence shows there was an understanding between Babcock and Oscar Lyle that this judgment should be assigned to Oscar, and that the assignment was made four months thereafter pursuant to that agreement. There was evidence tending to show such a state of facts, but there was much evidence to the contrary. The court, on an

instruction most favorable to plaintiff, found against him on this issue, and we approve that finding. The judgment is affirmed.