NORTHROP, Respondent, v. DIGGS, Appellant.

St. Louis Court of Appeals, January 7, 1908.

1. **PRACTICE: Evidence: Self-invited Error.** It is not reversible error to have permitted the introduction of incompetent evidence over an objection of the opposing party who invited its introduction by bringing out on cross examination the matter to which the objection relates.

2. ———: ———: **Leading Questions: Harmless Error.** It is permitted a party to ask leading questions of his own witness who is called to contradict categorically the statements of another witness; but the exclusion of such questions by the trial court is not reversible error where the testimony of the witness shows a clear and unequivocal contradiction of the statements sought to be contradicted.

3. ———: ———: **Variance: Instruction.** In an action for a commission alleged to be due plaintiff for the sale of the defendant's property, where the evidence showed that the plaintiff began negotiations with the purchaser for the sale of the property, which were never terminated, and the sale was concluded by another agent, an instruction authorizing a recovery upon the theory that the plaintiff *concluded* the agreement to sell with the purchaser was erroneous.

4. ———: ———: ———: ———: **Pleading.** And in such case where the petition alleged that an agreement was reached

between the plaintiff and the purchaser of the property, an instruction authorizing a recovery upon the theory that the plaintiff found a purchaser willing and able to buy, was erroneous and not within the scope of the pleading.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Shields,* Judge.

REVERSED AND REMANDED.

*John A. Gilliam* for appellant.

*Bernard Greensfelder* and *Abbott & Edwards* for respondent.

STATEMENT.—On November 1, 1902, defendant had a lease, to run about two years and two months, on premises No. 316 N. Main street, in city block No. 11, city of St. Louis. The petition alleges, in substance, that on November 1, 1902, defendant, being desirous of selling his leasehold interest in said property, authorized plaintiff to negotiate a sale of it for $1,000, agreeing to pay plaintiff for his services whatever sum he might receive over and above $1,000; that plaintiff entered upon negotiations with the Mississippi Valley Trust Company, agent for the purchase of the property for the Terminal Railroad Company, which terminated in the sale of said lease for $2,000, which sum was paid to defendant by said Trust Company, agent of the Terminal Railroad Company, for said lease, but that defendant has failed and refused to pay plaintiff the sum of $1,000 for his services as he agreed to do.

The answer was a general denial. Verdict and judgment for plaintiff for $1,000, from which defendant appealed.

The evidence shows that the Terminal Railroad Company, in 1902, wanted to acquire the property leased by defendant, and other property in the neighborhood, for the purpose of building an elevated railroad over

it, and had appointed the Mississippi Valley Trust Company its agent to acquire title to the property. The fact that the Terminal Railroad Company wanted the property was known to both plaintiff and defendant and also to others, and its desire to acquire the property was a matter of common notoriety. Plaintiff was a tenant of defendant from month to month and occupied the basement of the building and had desk room in the office, his desk and plaintiff's setting back to back, only three or four feet apart. Plaintiff testified there was some talk between him and defendant about the sale of the lease and he told defendant he would sell the lease for him and guarantee that he would get $1,000 for it; that defendant said he could have all he could get over $1,000, and to go out and sell it; that he started out to sell the lease, went first to the Terminal Railroad people, who directed him to the Mississippi Valley Trust Company, as its agent; that he then called at said Trust Company and was introduced to Mr. Benoist, the real estate officer of the Trust Company, and represented to him that he owned the lease and offered to sell it for $2,000; that Benoist said it was too much and made no offer for the lease, stating he was not ready to take the matter up; that he saw Benoist about a dozen times afterwards in respect to the sale of the lease, but never got an offer from him, and reported the result of his conversation with Benoist to defendant and told him he had asked $2,000 for the lease. It appears that about the fifteenth of January, 1903, Benoist, representing the Mississippi Valley Trust Company, and Mr. O'Fallon, the owner of the property, and defendant met in the same office; that Benoist and O'Fallon agreed upon the purchase price for the fee in the property, and Benoist was shown a copy of defendant's lease and was requested by O'Fallon to treat him fair in the purchase thereof; that Benoist then inquired about plaintiff's in-

terest in the property as a lessee, and learning he had no interest, turned the matter of acquiring defendant's interest over to Mr. .Walsh, real estate agent for the Trust Company. Beginning at an offer of $100 for the lease, Walsh finally bought it for $2,000, less a commission of $50, which he charged defendant. Plaintiff was not known to Walsh and took no part in the negotiations between Walsh and defendant which resulted in the purchase of the lease. Defendant denied most emphatically that he ever authorized plaintiff to sell the lease on any terms whatever.

BLAND, P. J. (after stating the facts).—1. On his redirect examination, plaintiff, over the objection of defendant, was permitted to testify that prior to the time defendant authorized him to sell the lease, defendant offered it to him for $1,000, and he had a letter or memorandum of the contract to that effect typewritten, but defendant refused to sign it. The admission of this evidence would have been error but for the fact that defendant's counsel, in his cross-examination of plaintiff, brought out the subject of an offer to sell the lease by defendant to plaintiff.

2. Error is assigned in the permission of the court for plaintiff to amend his petition and change his cause of action. There is but one petition in the abstract and it does not purport to be an amended petition, nor is there any statement in the abstract that an amended petition was filed at all, nor does the record show one was filed.

3. In defendant's examination, his counsel attempted to meet and deny categorically plaintiff's evidence of statements made to him by defendant in respect to the contract for the sale of the lease. On objections of plaintiff's counsel this course of examination of defendant was denied. Greenleaf says: "In some cases, however, leading questions are permitted, even in a di-

rect examination." Among the instances where this may be done, he mentions this one, "where a witness is called to contradict another, who has stated, that such and such expressions were used, or the like, counsel are sometimes permitted to ask, whether those particular expressions were used, or those things said, instead of asking the witness to state what was said." [1 Greenleaf on Evidence (Lewis Ed.), sec. 435.] The justice of this ruling, we think, is self-evident, but its non-observance does not call for a reversal of a judgment, when the witness' testimony, as does defendant's shows a clear, positive and unequivocal denial of the expressions attributed to him by plaintiff.

4. Error is assigned in the giving of the following instructions for plaintiff:

1. The court instructs the jury that if you believe from the evidence, that the defendant, W. P. Diggs, was occupying the premises on Main street, in the city of St. Louis, Missouri, as the tenant of John J. O'Fallon, on or about the first day of November, 1902, and that the defendant was desirous of disposing of and selling his interest in said lease, and authorized the plaintiff, Frank B. Northrup, to negotiate the sale of the same for the sum of one thousand dollars, and agreed to pay the said Frank B. Northrup for his said services, whatever sum the defendant received above the sum of one thousand dollars, and that the plaintiff, acting upon the representations and authority of the defendant, effected an agreement for a sale of said leasehold interest for the sum of two thousand dollars, and that said agreement was effected through the representations and efforts of said Northrup, then your verdict should be for the plaintiff in the sum of one thousand dollars, though the transaction was finally closed between the defendant, owner and the purchaser.

"2. The court instructs the jury that if you believe from the evidence, that the plaintiff was requested

by the defendant to find a purchaser for defendant's lease, and assist defendant in the sale of his lease to the premises on Main street, city of St. Louis, Missouri, and the defendant agreed to pay the plaintiff whatever sum the defendant received over and above one thousand dollars for the sale of said lease; and that the plaintiff, relying upon the representations and agreement of the defendant, secured for the defendant a purchaser of said lease for the sum of two thousand dollars, and said lease was sold by the defendant for the sum of two thousand dollars, to the purchaser so secured by the plaintiff, then your verdict shall be for the plaintiff in the sum of one thousand dollars, though the transfer and assignment of the lease was made directly between the defendant owner and the purchaser."

The petition alleges that through negotiations of plaintiff with the Mississippi Valley Trust Company, said company, as agent of the Terminal Railroad Company, agreed to pay plaintiff the sum of $2,000 for the lease.    Plaintiff's evidence shows that he offered the lease to Benoist, real estate officer of the Trust Company, for $2,000, but his offer was not accepted by Benoist, and his negotiations, if they can be called negotiations, began and terminated with an offer of the lease for $2,000.    The uncontradicted evidence also shows that the negotiations which terminated in the sale of the lease were carried on between Walsh and defendant in person, and that plaintiff took no part in, or even had knowledge of these negotiations. Therefore, there is no evidence upon which to predicate instruction No. 1 and it should not have been given.

5.    The second instruction is based upon the theory that plaintiff found a party ready, willing and able to buy the lease and brought that party into communication with defendant.    The gist of the action, as stated in the petition, is that plaintiff negotiated the sale of the lease for $2,000, and after an agreement had been

reached between him and the trust company, whereby the latter agreed to pay $2,000 for the lease, the Trust Company paid over the money to defendant. The instruction is therefore outside the scope of the petition, and for this reason is erroneous. The evidence offered by plaintiff, including his own and that of Benoist, only shows that plaintiff offered the lease to the Mississippi Valley Trust Company, the agent of the Terminal Railroad Company, for $2,000; that Benoist told him it was too much and he was not ready to take the matter up, and would not be until he could ascertain what the fee to the property could be bought for. If this transaction can be dignified as negotiations, then plaintiff began the negotiations for the sale of the lease which finally terminated in its sale for $2,000, and he is entitled to recover, provided he was employed by defendant to make the sale. The term "negotiate," as used in the petition, we think should be construed to mean conversation in arranging the terms of a contract, and as plaintiff's conversation with Benoist had reference to a sale of the lease and the terms upon which it could be bought, a jury might be authorized to find that plaintiff began the negotiations which finally resulted in the sale.

For errors noted, the judgment is reversed and the cause remanded. All concur.